IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

KARRI WINN,                              )
                                         )
                Plaintiff,               )    TC-MD 180290N
                                         )
        v.                               )
                                         )
DEPARTMENT OF REVENUE,                   )
State of Oregon,                         )
                                         )
                Defendant.               )    **DECISION**

Plaintiff appealed Defendant's Conference Decision, dated September 16, 2016, for the

2013 tax year. A trial was held on March 21, 2019, in the courtroom of the Oregon Tax Court.

Plaintiff appeared and testified on her own behalf. Kelly Young (Young), auditor, appeared and

testified on behalf of Defendant. Plaintiff's Exhibits 1 through 4 and Defendant's Exhibits A

through I were received without objection. Plaintiff offered an additional exhibit composed of

cell phone records, but Defendant objected because the exhibit was not timely exchanged under

Tax Court Rule-Magistrate Division (TCR-MD) 12.

## I. STATEMENT OF FACTS[1]

Plaintiff testified that she has worked in sustainability, community development, and

health and wellness since 1998. Plaintiff trained to become a somatic fitness teacher of the Nia

technique. In 2013, Plaintiff became an employee of Nia Technique (NT), while concurrently

operating her sole proprietorship, Culture Convivium, as a teacher and business consultant. (*See

also* Compl, Ex 3 at 1-2; Ptf's Mem at 1, Oct 11, 2018.) NT is company that operates studio

locations in Portland, Oregon, and licenses the Nia brand to gyms and studios internationally.

---

[1]Statements made by Plaintiff are from testimony at trial unless otherwise noted.

A.    *Plaintiff's Employment with NT*

As an employee of NT, Plaintiff held the position of Chief Visionary Officer (CVO).  As CVO, she engaged in business strategy and education.  Business strategy and education included working with an international faculty; creating a trainer financial plan in excess of 50 pages; promoting classes; tracking finances; and evaluating business performance.  Plaintiff partnered with NT's controller to analyze its chart of accounts and evaluate revenue streams.  Plaintiff created and maintained systems and coached faculty through business performance issues.

Additionally, Plaintiff worked with the creative founder of the Nia practice to develop the trainer-training program.  That included writing syllabi, evaluation metrics, and textbooks.  Plaintiff's body-centered business model and philosophy is "creating a sacred livelihood," which is one of the core principles of the Nia technique and was the foundation of her work for NT.

Plaintiff worked 37.5 hours per week on behalf of NT, though her daily work schedule varied to accommodate meetings and to complete projects.  Plaintiff worked from her home office for the convenience of NT.[2]  Defendant agreed to allow Plaintiff a home office deduction on Schedule A as an unreimbursed employee expense.[3]

B.    *Plaintiff's Sole Proprietorship*

Prior to 2013, Plaintiff's business activities included consulting, teaching Nia movement classes, leading classes and workshops at national events, and promoting her body-centric business.  (*See* Compl, Ex 3 at 1-2, Ptf's Mem at 1-2, Oct 11, 2018.)  The scope of Plaintiff's business activities shifted when she became an employee of NT in 2013.  (*See* Compl, Ex 3 at 1-

---

[2] Plaintiff provided an affidavit from the Jeff "Stuart" Stewart, CEO of NT, stating that Plaintiff's home office was convenient for his business because he "did not have to displace any of [his] employees from their workstations to accommodate her."  (Ptf's Ex 2.)

[3] Plaintiff claimed a home office deduction on her Schedule C and maintains that some portion of her home office expenses should be allocated to Schedule C.

2.) In 2013, Plaintiff taught four Nia movement classes. For those classes, Plaintiff developed a new playlist and choreography that required extensive preparation. Plaintiff taught her Nia movement classes on Fridays, Sunday mornings and afternoons, and Mondays.

1.  *Cell phone*

Plaintiff testified that her cell phone was her primary business tool and the point of contact for many of her clients. Plaintiff maintained the same phone number for years and had that number printed on all her business cards. Additionally, all her clients knew her cell phone number as her business number. Plaintiff made calls to current and potential clients. She scheduled her Nia classes using her phone and received cancellation calls from students.

Plaintiff testified that she carried an AT&T business plan to accommodate the business use of her phone. Plaintiff made international calls that a standard consumer plan would not accommodate. Plaintiff estimated that she used her cell phone 89 percent of the time for business and 11 percent for personal use. Plaintiff did not have a separate phone line or cell phone exclusively for business use. Young questioned Plaintiff about a document submitted at conference stating that Plaintiff was willing to stipulate to an allocated business expense of $420, or 25 percent, business use. Plaintiff testified that she agreed to that allocation at conference.

Young testified that she did not allow any cell phone expenses because she saw no evidence that Plaintiff incurred any additional expenses attributable to her business use of the phone. Additionally, Young testified that she saw no evidence to support a reasonable allocation of phone expenses to business use and therefore disallowed all Schedule C cell phone expenses.

/ / /

/ / /

/ / /

2.    *Business use of home*

Plaintiff testified that she has used her home office for many years and that she is aware of the "exclusive use" requirement for the business use of home deduction. She operated her sole proprietorship concurrently while employed for NT. Plaintiff spent about 10 hours per week preparing for Nia classes in her home office. She estimated that she used her home office for her sole proprietorship 20 percent of the time. Plaintiff did not follow a fixed schedule to prepare for classes; she switched between NT work and her sole proprietor work numerous times per day.

3.    *Travel Expenses*

In 2013, Plaintiff attended Summit Outside (Summit), an event held in Eden, Utah, for entrepreneurs. Summit was a retreat for "like-minded individuals" to gather and "disconnect, with the promise of 'finding a better connection.' " (Def's Ex G at 1.) Summit offered multiple activities, including yoga, hiking, horseback riding, paint ball, swimming, and dancing. (*See id.* at 3.) Additionally, it offered opportunities to hear guest speakers discuss a wide variety of topics.

Plaintiff testified that she attended Summit as a business networking opportunity. (*See also* Compl at 6-7.) She auditioned to be a presenter at Summit but was not added to the schedule due to the timing of her audition. (*See id.* at 6.) Although Plaintiff was not selected to present, she thought attending Summit was an effective way to promote her business and gain new clients. (*See id.*) She testified that attending Summit gave her access to a premium business network and she brought her business cards to give to potential clients. Plaintiff's business is not based solely in Portland, so national and international conferences are part of her marketing and advertising. Additionally, Plaintiff attended lectures relevant to improving her public speaking, which is part of her health and wellness business. (*See also id.* at 6-7.)

DECISION TC-MD 180290N                                                                 4

Plaintiff paid a single fee to attend Summit that included food and lodging without further itemization of the food and lodging expenses. Plaintiff offered to stipulate to a deduction of $1,000, or 50 percent, of the total cost. Young testified that there was no business purpose for Plaintiff to attend the Summit conference; it appeared primarily recreational.

4.    *Agreed-upon expenses*

Defendant agreed that Plaintiff should be allowed Schedule C expenses in addition to what it allowed during the audit and at conference. Specifically, Defendant agreed that Plaintiff should be allowed $860 in automobile expenses;[4] $175 for interest; an additional $647 for office expenses;[5] an additional $25 for parking and tolls;[6] an additional $88 for education;[7] and an additional $16 for business materials,[8] for a total of $1,811. (*See* Def's Status Report, Oct 22, 2018; Def's Pre Trial Mem, Mar 19, 2019.)

C.    *Residential Rental Activity*

Plaintiff purchased a house in 2011 that included a finished basement studio and an attic bedroom. (*See also* Ptf's Mem at 5-6, Oct 4, 2018.) From March 2011 to July 1, 2012, Plaintiff rented the basement studio to her former roommate from a prior rental, Palma Vizzoni (Vizzoni). (*See also id.* at 2.) They had an oral agreement but discussed some expenses over email. (*See also id.* at 2-3.) Plaintiff allowed Vizzoni to pay a "friendship rate" of $900 per month. She acknowledged that $900 per month for rent was not a fair market price. Vizzoni lived in the

---

[4] $202 was allowed in Defendant's Status Letter, filed October 22, 2018, and the balance was allowed at trial.

[5] $62 was allowed during the audit and sustained at conference. (Ptf's Ex 1 at 2-3.)

[6] $20 was allowed during the audit and sustained at conference. (Ptf's Ex 1 at 3.)

[7] $394 was allowed during the audit and sustained at conference. (Ptf's Ex 1 at 3.)

[8] $111 was allowed during the audit and sustained at conference. (Ptf's Ex 1 at 3.)

basement studio, but also used the attic space and had access to the entire house.

After Vizzoni moved out in July 2012, Plaintiff's friends visited in July and August 2012, using the basement and attic spaces. In September 2012, Plaintiff discovered a water leak in the basement; she found wetness on the carpets and baseboard of the south-facing wall of the basement unit. Plaintiff received a report from "American Leak Detection" on October 17, 2012, confirming a leak in the basement living room. (Compl at Ex 4.) Plaintiff had to remove the damaged baseboards and part of a wall to reach a drain that caused the water leak. Additionally, the water damage led to mold growth under the carpet, which had to be removed. Removal of the carpet uncovered a damaged concrete floor caused by tree roots, which also required repair.

Plaintiff's home insurance policy would not cover the water damage, so Plaintiff's partner, Brian MacEwan, did all the work in exchange for "lodging, daily groceries and food (meals during work days * * *), limited health expenses and * * * several small cash stipends coinciding with major work periods." (*See also* Ptf's Compl Ex 3 at 2; Ptf's Ex 3.) Plaintiff testified that she started repairs on the basement unit at the end of 2012 and the repairs were finished by the end of 2013. She testified that all the work completed was required for the basement to be rentable and that all the work done was for repairs, and not remodeling.

Plaintiff had secured a tenant, Gentry Smith (Smith), to rent the basement unit starting in September 2012, prior to her discovery of the leak. However, Smith could not occupy the basement unit during the repairs, so he rented the attic unit until the basement repairs were complete. Plaintiff charged Smith $680 per month to rent the partially furnished attic in 2012 and 2013 while the basement was being repaired. (*See also* Compl Ex 3 at 2.) In 2014, she rented the basement for $1,200 per month.

Young testified that the basement unit was not available for rent in 2013 and, prior to

2013, Plaintiff rented the unit for below market rent, deeming the rental rate "personal" under IRC section 280. She testified that the expenses incurred in 2013 should be capitalized because the unit was taken out of service in 2013. Young testified that the repair expenses of $10,943 should be capitalized on Plaintiff's 2014 return when the basement unit was placed in service.

Defendant agreed that Plaintiff should be allowed Schedule E expenses associated with the attic unit in addition to what it allowed during the audit and at conference. Specifically, Defendant agreed that Plaintiff should be allowed $10 for a returned check fee; $487 for furniture; and $54 for landscaping. (Def's Status Report, Oct 22, 2018.)

## II. ANALYSIS

There are four issues for decision for the 2013 tax year: (1) whether Plaintiff may deduct a portion of her cell phone expenses; (2) whether Plaintiff may allocate a portion of her home office deduction to her sole proprietorship; (3) whether Plaintiff may deduct expenses associated with attending the Summit conference; and (4) whether Plaintiff may deduct expenses associated with her basement studio unit, including costs incurred to repair water damage.

The Oregon legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code [IRC] relating to the measurement of taxable income of individuals, * * * modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1).[9] In general, terms have "the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined * * *." ORS 316.012. On the issue of business expenses and rental expenses, "Oregon law makes no adjustments to the rules under the [IRC] and therefore, federal law governs the analysis." *See*

---

[9] The court's references to the Oregon Revised Statutes are to 2011.

*Porter v. Dept. of Rev.*, 20 OTR 30, 31 (2009).

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253 (2002), 2002 WL 236685 at *2 (US Tax Ct) (internal citations omitted). IRC section 212 allows an individual to deduct all the ordinary and necessary expenses associated with the production of income, and "for the management, conservation, or maintenance of property held for the production of income." IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise allowed under the IRC.

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488 (2001), 2001WL 332038 at *2 (US Tax Ct) (requiring taxpayers "to maintain records sufficient to substantiate their claimed deductions").

Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of the allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). IRC section 274(d) supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4)(A); *see also* Treas Reg §

1.274-5T(a). Taxpayers must substantiate each element of such expenses "by adequate records or by sufficient evidence corroborating the taxpayer's own statement * * *." IRC § 274(d).

> "To meet the 'adequate records' requirements of [IRC] section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *."

> Treas Reg § 1.274-5T(c)(2)(i).

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief[.]" ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency, even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue, and even if determined upon grounds other or different from those asserted by the department * * *." ORS 305.575.

A.      *Business Expenses for Sole Proprietorship*

1.      *Cell phone*

Plaintiff claims that she used her cell phone 89 percent of the time for business use and requests a deduction based on that usage. Cell phone expenses are no longer listed property and are not, therefore, subject to the strict substantiation requirements of IRC section 274(d).[10] An

---

[10] As of January 1, 2010, cell phones and other similar personal telecommunications devices were no longer considered "listed property" under IRC section 280F.

apportioned amount of cell phone expenses can be deducted even if the taxpayer uses the cell phone for both business and personal use. Because cell phone expenses are not subject to the strict substantiation rules of IRC section 274(d), the court may make a reasonable estimate of the allowable deduction if Plaintiff cannot establish the precise amount. *See Cohan*, 39 F2d at 543. However, any such estimate will "bear[ ] heavily against the taxpayer who failed to more precisely substantiate the deduction." *Noz v. Comm'r*, 104 TCM (CCH) 350 (TC 2012).

When a taxpayer uses a single cell phone for personal and business uses, the uses become commingled and it may be difficult to determine a precise amount to allocate to each use. Although strict substantiation is not required, some record or documentation demonstrating the amount of business use is helpful to establish a reasonable allocation. A record or document would likely be sufficient evidence for the court to estimate a deduction for business use.

Defendant denied Plaintiff's cell phone expense deduction, citing *Fausner v. Comm'r*, 413 US 838, 93 S Ct 2820, 37 L Ed 2d 996 (1973). In *Fausner*, the court held that non-deductible commuting expenses could not be converted to deductible business expenses merely because the taxpayer carried "incidentals of his occupation" on his commute; specifically, a commercial airline pilot transporting luggage. Here, Plaintiff's testimony supports a finding that the business use of her cell phone was more than incidental; she described regularly using her cell phone to communicate with both current and potential clients concerning the Nia classes she taught. The question becomes whether Plaintiff presented sufficient evidence to support a reasonable allocation of cell phone expenses to business use.

Plaintiff testified that she incurred additional expenses from having a business plan and from making international calls. However, she failed to provide evidence of those additional expenses or a reasonable basis to estimate them. Plaintiff testified that she used her cell phone for business

purposes 89 percent of the time but failed to provide any written records to support that allocation.

Finally, Plaintiff acknowledged she had offered to stipulate to a deduction of $420, representing 25

percent business use, but Defendant was unwilling to accept that stipulation. Although Plaintiff's

testified credibly that she used her cell phone for business purposes, she did not present adequate

evidence from which to estimate the amount of business use. Because the court cannot make a

reasonable estimate of Plaintiff's business use of her cell phone, no deduction is allowed.

2.      *Home office*

Generally, no deduction is allowed with respect to the use of a dwelling unit that is used

by the taxpayer as a residence. IRC § 280A(a). However, a deduction may be taken for "any

item to the extent such item is allocable to a portion of the dwelling unit which is exclusively

used on a regular basis * * * as the principal place of business for any trade or business of the

taxpayer[.]" IRC § 280A(c)(1)(A).

> "[T]he term 'principal place of business' includes a place of business which is
> used by the taxpayer for the administrative or management activities of any trade
> or business of the taxpayer if there is no other fixed location of such trade or
> business where the taxpayer conducts substantial administrative or management
> activities of such trade or business."

IRC § 280A(c)(1)(C). So long as the home office is used exclusively for business purposes " 'a

taxpayer can have a principal place of business for each separate trade or business of the

taxpayer, and * * * can deduct the expenses attributable to using [her] residence as the principal

place of business for one or more such businesses.' " *Hamacher v. Comm'r*, 94 TC 348, 355–56

(1990).[11] "[W]hen a taxpayer utilizes one home office in conducting numerous business

activities, each and every business use must be of the type(s) described in section 280A(c)(1).

---

[11] As here, the taxpayer in *Hamacher* used his home office both for his employment and for his
independent business. 94 TC at 354.

Otherwise, the exclusive use requirement of that section will not be satisfied and the general non-deductibility provision of section 280A(a) will apply." *Id*. at 356.

Plaintiff testified that she used her home office exclusively for business purposes of her employment with NT and her sole proprietorship. Defendant accepted that Plaintiff used her home office for the convenience of her employer, NT, and agreed to allow the home office deduction as an unreimbursed employee business expense. The question is whether Plaintiff's use of her home office for her sole proprietorship also satisfies the requirements of IRC section 280A(c)(1). Although Plaintiff taught Nia classes outside her home at two different studios in the Portland area, she prepared for those classes in her home office. Because preparation of classes is an administrative or management activity of her business, Plaintiff's home office was the principal place of business for her sole proprietorship.[12]

Plaintiff estimated that she spent about 10 hours per week in her home office preparing for the Nia classes she taught, by preparing play lists and practicing choreography. Based on that use, Plaintiff may allocate 20 percent of her home office expenses to her sole proprietorship.

### 3.    *Travel and Entertainment*

Expenses incurred for business travel or entertainment[13] are subject to the strict substantiation requirements of IRC section 274(d). Taxpayers "must substantiate each element

---

[12]  "[I]t is not relevant that 'the taxpayer conducts substantial non-administrative or non-management business activities at a fixed location of the business outside the home (e.g., meeting with, or providing services to, customers, clients, or patients at a fixed location of the business away from home).' For taxpayers other than employees, the availability of the deduction is not affected by whether 'the taxpayer opted not to use an office away from home that was available for the conduct of such activities.' *Bittker and Lokken*, Federal Taxation of Income, Estates and Gifts, ¶ 22.6.3 RESIDENTIAL PROPERTY USED FOR BUSINESS AND PROFIT-ORIENTED PURPOSES—HOME OFFICES, VACATION HOMES, ETC. – Exempted Uses.

[13] "[T]he term entertainment means any activity which is of a type generally considered to constitute entertainment, amusement, or recreation, such as entertaining at night clubs, cocktail lounges, theaters, country clubs, golf and athletic clubs, sporting events, and on hunting, fishing, vacation and similar trips * * *." Treas Reg 1.274-2(b)(1)(i). Given the many recreational aspects of the Summit conference – yoga, hiking, horseback riding, paint ball, swimming, and dancing – it meets the definition of entertainment.

of an expenditure or use * * * by adequate records or by sufficient evidence corroborating [her] own statement." Temp Treas Reg § 1.274-5T(c)(1). "Written evidence has considerably more probative value than oral evidence alone. In addition, the probative value of written evidence is greater the closer in time it relates to the expenditure or use." *Id*. Such expenses must serve a "business purpose." *See* Temp Treas Reg § 1.274–5T(b)(2), (3). Additionally, entertainment expenses are deductible only if they are "directly related" or "associated with the active conduct of [Plaintiff's] trade or business." IRC § 274(a)(1).

Plaintiff testified that her attendance at Summit[14] was for business networking purposes and for education on public speaking, health, and wellness. She has presented at similar conferences in the past and hoped to make connections for future presentations at Summit and similar conferences. Defendant disallowed the expenses because "the travel incurred was not directly related to [Plaintiff's] income producing activity for Nia movement classes." (Def's Ex B at 7.) The court understands Defendant to mean that Plaintiff did not adequately substantiate the business purpose of her travel to Summit, or that the business purpose was incidental to personal, recreational components of the travel. Generally, the mere "promotion of goodwill" is insufficient to establish that entertainment is "directly related" to taxpayer's trade or business. *See Walliser v. Comm'r*, 72 TC 433, 441-42 (1979) (denying taxpayer's deduction for expenses incurred to participate in guided foreign travel with others in his industry group in order to meet potential clients and to "maintain good personal relations" with existing clients). Accordingly, the court declines to allow a deduction for expenses associated with attending Summit.

---

[14] Plaintiff paid a lump sum fee to attend Summit without any further itemization to identify which part of the fee was food, lodging, conference sessions, or recreational activities. Accordingly, the court analyzes the entire expense as either a travel or entertainment expense, subject to strict substantiation under IRC section 274(d).

B.      *Residential Rental Expenses*

Ordinary and necessary expenses of renting a property may include repair expenses.  *See* Treas Reg § 1.162–4.  However, under IRC section 263(a)(1), "no deduction shall be allowed for * * * [a]ny amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."  *See also Moss v. Comm'r*, 831 F2d 833, 835 (9th Cir 1987).[15]  "A unit of property is improved if the amounts paid for activities performed after the property is placed in service by the taxpayer—(1) Result in a betterment to the unit of property * * *; (2) Restore the unit of property * * *; or (3) Adapt the unit of property to a new or different use."  Temp Treas Reg § 1.263(a)-3T(d).  Among other things, a "betterment" of a unit of property "[a]meliorates a material condition or defect that either existed prior to the taxpayer's acquisition of the unit of property or arose during the production of the unit of property, whether or not the taxpayer was aware of the condition or defect at the time of acquisition or production[.]"  Temp Treas Reg § 1.263(a)-3T(h)(1).

The Ninth Circuit characterized the distinction between repairs and capital improvements as "the difference between 'keeping' and 'putting' a capital asset in good condition:

> "The test which normally is to be applied is that if the improvements were made to 'put' the particular capital asset in efficient operating condition, then they are capital in nature.  If, however, they were made merely to 'keep' the asset in efficient operating condition, then they are repairs and are deductible."

*Moss*, 831 F2d at 835, citing *Estate of Walling v. Comm'r*, 373 F2d 190, 192–93 (3d Cir 1967). The proper characterization of expenditures depends on the context in which they are made.  *Id.* at 835–36 (citations omitted).  For instance, in the context where the taxpayer has erected a new

---

[15] Citing IRC §§ 162(a), 263(a)(1) ("Generally speaking, expenditures for ordinary and necessary repairs may be deducted in the year incurred, while expenditures for permanent improvements or betterments made to increase the value of any property must be capitalized and depreciated over the useful life of the improvement"). *See also* Temp Treas Reg § 1.162–4T(a) ("A taxpayer may deduct amounts paid for repairs and maintenance to tangible property if the amounts paid are not otherwise required to be capitalized").

building, "items of work which the contractor might have undertaken to prepare the building for occupancy such as carting away refuse or painting or even washing windows, could hardly be separated from the whole cost and deducted as expenses." *Stoeltzing v. Comm'r*, 266 F2d 374, 377 (3d Cir 1959). "[A]n expenditure made for an item which is part of a 'general plan' of rehabilitation, modernization, and improvement of the property, must be capitalized, even though, standing alone, the item may appropriately be classified as one of repair." *U.S. v. Wehrli*, 400 F2d 686, 689 (10th Cir 1968).

Plaintiff deducted all expenses associated with work on her basement unit as repairs. If the only expense was repairing the water leak it may have constituted a repair to "keep" the property in operating condition. However, the additional work required to make the basement unit habitable transformed the project into one of improvement or betterment. Replacing the concrete floor, baseboards, and drywall, and adding a window ameliorated a material condition of the basement and, therefore, constitutes a betterment or improvement of the property. Items that may have qualified as repairs became part of a larger plan to improve the basement unit. The expenses Plaintiff incurred in 2013 for the basement unit must be capitalized.

The next question is whether Plaintiff may deduct expenses for the basement unit in 2013, which depends on when it was placed in service. Generally, a property is placed in service when it is acquired and ready for its intended use. *See* Rev. Proc. 87-57, 1987-2 CB 687, § 2.05 (property is placed in service when it "is first placed by the taxpayer in a condition or state of readiness and availability for a specifically assigned function"). Where a residence is converted from personal use to property held for the production of income, the conversion occurs when the property is listed for rent, even if some time lapses before a tenant is found. *See Robinson v. Comm'r*, 2 TC 305 (1943). Generally, a property "converted to income-producing purposes by a

rental" is not "reconverted to nonbusiness use once the rental arrangement ceases." *McBride v. Comm'r*, 50 TC 1, 10 (1968) ("if residential property is converted to income-producing purposes prior to sale, and is not reconverted by some conduct of the owner prior to sale, the owner is entitled to a deduction for a loss sustained on the sale"); *see also Newcombe v. Comm'r*, 54 TC 1298, 1302 (1970) (once a property is "held for investment" within the meaning of section 212, "the subsequent absence of the economic indicators of profit, during any given period of time, will not preclude a deduction"). However, courts may be skeptical where a taxpayer claims that part of their personal residence is held for the production of income despite no actual rental. *See Casey v. Comm'r*, 24 TCM (CCH) 1558 (1965) (rooms in taxpayer's house were not held for income-producing purposes despite rental in prior years where taxpayer received no rental income and failed to produce evidence of continuous and diligent efforts to rent the rooms).

Here, Plaintiff maintains that her basement unit was a rental prior to 2013 because she rented it to her roommate, Vizzoni, from 2011 to 2012. However, Plaintiff acknowledged that she gave Vizzoni a "friendship rate" that was below market rate. Where the taxpayer rents property below market rate, for instance to a family member or close friend, courts typically conclude that such rentals are not conducted with a profit motive. *See, e.*g., *Jasionowski v. Comm'r*, 66 TC 312 (1976) (disallowing loss deduction for property leased below market to a family friend); *Eisenstein v. Comm'r*, 37 TCM (CCH) 441 (1978) (limiting rental expenses to the extent of rental income under IRC section 183 because taxpayer rented condo to parents at below market rent). Thus, the basement unit retained its personal character despite Plaintiff's rental to Vizzoni. Plaintiff also described discussions with Smith in 2012 about renting the basement unit. The timing of those discussions is unclear from the evidence and Smith did not rent the basement unit until 2014 because it was uninhabitable. Ultimately, Plaintiff did not provide sufficient

evidence that the basement unit was an active rental property in 2013 and she may not deduct expenses associated with it for 2013. As agreed upon by Defendant, Plaintiff is allowed $10 for a returned check fee; $487 for furniture; and $54 for landscaping for the attic unit.

## III. COSTS AND DISBURSEMENTS

Plaintiff filed a statement for costs and disbursements (statement) on April 22, 2019,[16] requesting an award of $459.17, composed of the filing fee, postage fees, and FedEx printing, mailing, and fax fees. The court did not receive an objection from Defendant.

The magistrate has discretionary authority to award "costs and disbursements" to prevailing parties. *Wihtol I v. Dept. of Rev.*, 21 OTR 260, 267-68 (2013); *see also* Tax Court Rule-Magistrate Division (TCR–MD) 16 B.

> " 'Costs and disbursements' are reasonable and necessary expenses incurred in the prosecution or defense of an action other than for legal services, and include the filing fee; the statutory fees for witnesses; the necessary expense of copying of any public record, book, or document used as evidence in the trial; and any other expense specifically allowed by agreement, by these rules, by TCR 68 A(2), or by other rule or statute."

TCR–MD 16 A. The "prevailing party" is determined on a "claim by claim basis." *Robert Camel Contracting, Inc. v. Krautscheid,* 205 Or App 498, 504, 134 P3d 1065 (2006). "To determine who is the prevailing party on each claim, a court must weigh 'what was sought by each party against the result obtained.' " *Beggs v. Hart,* 221 Or App 528, 537–38, 191 P3d 747 (2008). "[I]t does not necessarily follow that, merely because a party does not obtain all the relief sought, a party is not a prevailing party[.]" 221 Or App at 536.

Although Plaintiff did not receive all of the relief she sought in this appeal, she received additional deductions beyond what was allowed at conference. Accordingly, the court concludes

---

[16] Plaintiff initially mailed her statement on April 3, 2019, but she used the court's physical address rather than mailing address, so the statement was returned to her.

that Plaintiff is a prevailing party. Plaintiff's requested costs and meet the definition of "costs and disbursements" in TCR-MD 16 A and Defendant did not object to Plaintiff's statement. Plaintiff is awarded costs and disbursements in the amount of $459.17.

## IV. CONCLUSION

Upon careful consideration, the court concludes that Plaintiff's appeal for the 2013 tax year should be granted in part and denied in part. Now, therefore,

IT IS THE DECISION OF THIS COURT that, as agreed by Defendant, Plaintiff may deduct 80 percent of her home office expenses as an unreimbursed employee business expense.

IT IS FURTHER DECIDED that Plaintiff may deduct 20 percent of home office expenses as a business expense associated with her sole proprietorship.

IT IS FURTHER DECIDED that Plaintiff's cell phone expense deduction is denied.

IT IS FURTHER DECIDED that Plaintiff's travel or entertainment expense deduction associated with attending Summit is denied.

IT IS FURTHER DECIDED that, as agreed by Defendant, Plaintiff may deduct the following expenses associated with her sole proprietorship: $860 in automobile expenses; $175 for interest; an additional $647 for office expenses; an additional $25 for parking and tolls; an additional $88 for education; and an additional $16 for business materials, for a total of $1,811.

IT IS FURTHER DECIDED that, as agreed by Defendant, Plaintiff may deduct the following expenses associated with her rental of the attic unit in her residence: $10 for a returned check fee; $487 for furniture; and $54 for landscaping.

IT IS FURTHER DECIDED that Plaintiff's expenses associated with repairing and renovating the basement unit in her residence must be capitalized. She may not deduct expenses associated with the basement unit in 2013.

IT IS FURTHER DECIDED that Plaintiff is awarded costs and disbursements in the amount of $459.17.

Dated this ____ day of July 2019.


_____
ALLISON R. BOOMER
MAGISTRATE


*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Allison R. Boomer and entered on July 29, 2019.*